# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLIED WORLD INSURANCE COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>NEW PARADIGM PROPERTY MANAGEMENT, LLC, a California corporation, and DOES 1 through 20, inclusive,<br><br>Defendants. | No. 2:16-cv-02992-MCE-GGH<br><br>**MEMORANDUM AND ORDER** |

Through the present action, Plaintiff Allied World Insurance Company ("Plaintiff" or "Allied") seeks a declaratory judgment and consequential damages arising from Defendant New Paradigm Property Management's ("Defendant" or "New Paradigm") allegedly false disclosures and non-disclosures that purportedly induced Plaintiff to issue a performance bond to general contractor, TEC Construction Services, Inc. ("TEC").[1] Plaintiff's Complaint filed December 22, 2016, sets forth causes of action for (1) declaratory relief, (2) fraud in the inducement, (3) intentional and negligent representation, and (4) fraudulent concealment. ECF No. 1. At base, Plaintiff seeks a determination that its bond is unenforceable and should be exonerated because of New

---
[1] TEC is not a party to this action.

1

Paradigm's representations. The parties refer to this suit as the "Bond Exoneration/Declaratory Relief Action."

On December 28, 2016, New Paradigm filed a separate lawsuit in Placer County Superior Court against Allied seeking to enforce the same bond. In its Complaint, New Paradigm asserts causes of action for breach of contract and declaratory relief. ECF No. 1. Allied removed that case to this federal district on March 14, 2017, and the two cases were related and consolidated by stipulation and a Court order dated April 24, 2017. ECF Nos. 17, 19. The parties refer to the second action as the "Breach of Contract/Bond Enforcement Action."

Presently before the Court is Defendant New Paradigm's Motion to Compel Arbitration and Dismiss Plaintiff's Complaint, or Alternatively, Stay Action.[2] Def's Mot., ECF No. 6. The matter has been fully briefed.[3] See Def's Mot.; Pl's Opp., ECF No. 8; Def's Reply, ECF No. 9; Pl's RJN, ECF No. 14; Def's Obj., ECF No. 15. For the reasons discussed below, the motion is DENIED.[4]

///
///
///
///
///

---

[2] For ease of reference and clarity, the Court will refer to Allied as "Plaintiff" and New Paradigm as "Defendant" throughout this Order, as the parties have done in recent filings. See Reply to Request for Ruling, ECF No. 25, at 2. The Court will also refer to the lawsuits by the respective designations indicated above, which titles were also provided by the parties. Id.

[3] Plaintiff also requests that the Court take judicial notice of (1) New Paradigm's complaint in Placer County Superior Court Case No. SCV0038842, and (2) Allied's Notice of Removal of the Placer County action to this District. Defendant objects on the basis that Plaintiff's Request for Judicial Notice ("RJN") was not timely filed with Plaintiff's Opposition, and further is not relevant and/or is more prejudicial than probative under Federal Rules of Evidence 401 and 403. Because both documents have since been filed with this Court in related and consolidated Case No. 17-cv-00552-MCE-GGH, however, the Court may consider those documents in any event and need not take judicial notice of them. Plaintiff's RJN is therefore denied as moot, and Defendant's objections are likewise overruled as moot.

[4] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local R. 230(g).

2

# BACKGROUND[5]

Defendant is the owner of certain real property in Rocklin, California, on which a hotel sits. Defendant contracted with general contractor TEC to undertake a remodel of the hotel in November 2015 (the "Prime Contract"). That contract contains a provision mandating arbitration of "[a]ll claims and disputes between Contractor and Owner that cannot otherwise be resolved . . . ." Decl. of Brittany Rupley ISO Def. Mot., Ex. A-A, "Prime Contract," at § 22. The contract also required TEC to obtain a performance bond and payment bond for the project. Id. § 13. In December 2015, Plaintiff issued the required performance bond and payment bond in connection with TEC's work under the Prime Contract (the "Bonds"). By their terms, the Bonds explicitly incorporate the terms of the Prime Contract without exception. Decl. of Brittany Rupley ISO Def. Mot., Ex. A-C, "Bonds." In January 2016, TEC defaulted in the performance of its work and Defendant made a claim against the performance Bond. Plaintiff ultimately denied that claim in April 2016.

Presumably based on the language of the Prime Contract, Defendant sent Plaintiff a notice of intent to arbitrate in December 2016. Plaintiff did not respond to Defendant's demand and as briefly explained above, both parties thereafter initiated separate lawsuits, with Plaintiff claiming the Bond is unenforceable because it was procured by fraud and Defendant claiming the Bond is enforceable and Plaintiff breached the contract.

Before Plaintiff removed Defendant's Bond Enforcement Action to this Court—but after that action was filed in state court—Defendant filed the present Motion to Compel Arbitration of Plaintiff's Bond Exoneration Action.

///
///
///

---

[5] The following recitation of facts is derived from the parties' briefing.

3

# STANDARD

"The [Federal Arbitration Act ("FAA")] was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA "reflect[s] . . . a 'liberal federal policy favoring arbitration." Concepcion, 131 S. Ct. at 1745 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). At the same time, however, § 2 reflects "the 'fundamental principle that arbitration is a matter of contract.'" Id. (quoting Rent-A-Center, W., Inc. v. Jackson, 130 S. Ct. 2772, 2776 (2010)). "[Section] 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims, in accordance with the terms of the agreement; and § 4 requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement . . . ." Id. at 1748.

Thus, "[b]y its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4) (emphasis in original). "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 475 (9th Cir. 1991). "Moreover, the scope of an arbitration clause must be interpreted liberally and 'as a matter of federal law, any doubts concerning the scope of arbitrable disputes should be resolved in favor of arbitration.'" Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (quoting Moses H. Cone, 460 U.S. at 24; Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1144 (9th Cir. 1991); French v. Merrill Lynch, 784 F.2d 902, 908 (9th Cir. 1986)).

Thus, "[a]n order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960).

In determining whether to compel arbitration, the Court may not review the merits of the dispute. Rather, in deciding whether a dispute is subject to the arbitration agreement, a court must answer two questions: (1) "whether a valid agreement to arbitrate exists," and, if so, (2) "whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). If a party seeking arbitration establishes these two factors, the court must compel arbitration. 9 U.S.C. § 4; Chiron, 207 F.3d at 1130. Accordingly, the Court's role "is limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 479 (9th Cir. 1991).

## ANALYSIS

### A. Waiver of Arbitration

As a preliminary matter, Plaintiff argues that Defendant has waived any right to arbitrate the controversy by filing its Bond Enforcement Action in court, as opposed to arbitrating that suit. The Court agrees that it makes little sense to compel arbitration of the Bond Exoneration Action while filing what essentially amounts to a counterclaim in state court. Plaintiff, however, cites to no authority for this proposition. Moreover, because the Court denies Defendant's Motion to Compel Arbitration on the merits of that motion, see infra, the Court need not and does not decide whether Defendant has otherwise waived its right to arbitrate.[6]

---

[6] For these same reasons, the Court need not and does not decide if Defendant waived its right to arbitration by using court discovery tactics in a separate lawsuit, as also argued by Plaintiff.

### B. Valid Agreement to Arbitrate

Plaintiff does not dispute that a valid agreement to arbitrate exists within the Prime Contract, as between TEC and Defendant. See Pl's Opp. at 5. Plaintiff disputes, however, that the agreement applies to it as the surety. To the extent Plaintiff argues that the arbitration agreement does not apply because it is not a party to the underlying Prime Contract, that argument is negated by the fact that the Bond specifically incorporates the Prime Contract without limitation. Indeed, an abundance of case law provides that a surety may be bound by an arbitration clause in the underlying contract to which it is not a party where that contract is incorporated by reference in the Bond. See Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co., 6 Cal.App.4th 1266 (1992); see also Tower Ins. Co. of N.Y. v. Davis/Gilford, 967 F. Supp. 2d 72 (D.D.C. 2013).

### C. Scope of the Agreement

The only remaining issue, then, is whether the scope of that arbitration provision encompasses the controversy at issue between Plaintiff and Defendant. It does not.

Even assuming the Bond and the Prime Contract "must be read together, as 'parts of substantially one transaction,'" Def. Reply at 2, citing Cal. Civ. Code § 1642, reading the two documents together does not automatically impose all obligations in the contract on Plaintiff. Specifically, the scope of the arbitration clause—even when read as part of the Bond—is limited to (1) "[a]ll claims and disputes between Contractor and Owner that cannot otherwise be resolved . . ." (emphasis added), and (2) disputes that arise "[i]f a party materially breaches any provision of this Agreement." Prime Contract, § 22. By its explicit terms, then, there can be no question that the arbitration clause does not extend to the present dispute between the surety and the owner concerning alleged fraud in procuring the Bond. Ultimately, Plaintiff incorporated and adopted through the Bond an agreement requiring two other parties to arbitrate disputes between themselves in the event a party materially breached a provision of that agreement. See id.

6

Defendant cites to Boys Club in support of its position that Plaintiff may be bound to the arbitration agreement, even where the language of that agreement is limited to claims "between Contractor and Owner." Def's Mot. at 4, citing 6 Cal. App. 4th at 1270. But Boys Club is distinguishable in at least one important respect. There, the contractor and owner were engaged in an ongoing arbitration concerning a breach, and the plaintiff moved to compel the surety to join that arbitration. Because the arbitration provision explicitly compelled arbitration of claims "between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof," Boys Club, 6 Cal. App. 4th at 1270, the court determined that the parties—including the surety by way of bond—intended that the surety "would join in arbitration of disputes between the parties to the contract in view of the fact that such disputes necessarily affect its liability under the bond." The surety was therefore compelled to join in the pending arbitration between the contractor and owner. Id. at 1273. That is not the case here where there is no pending dispute between Defendant and TEC concerning the Prime Contract, and Boys Club is therefore inapposite.

Lastly, Defendant contends that the matter should be referred to arbitration because any attempt to void the contract as a whole, as opposed to one attacking the specific arbitration provision, must be addressed by an arbitrator. Prima Paint Corp. v. Flood & Conklin Mfg.Co., 388 U.S. 395 (1967); See Def's Mot. at 5 ("[I]n Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1264 (9th Cir. 2006) (en banc), . . . [the Ninth Circuit] held that federal courts must refer to arbitration those claims seeking to 'invalidate or otherwise directly affect the entire contract . . . .'"). While an accurate statement of the law, it is not relevant here where there is no question that the scope of the arbitration agreement does not extend to the present dispute. Indeed, it cannot be the case that any challenge to a contract[7] must be referred to arbitration if the contract contains any

---

[7] It should also be noted that although the Court acknowledges that the language of the Prime Contract was incorporated by reference into the Bond, the Court is not convinced that Plaintiff's claim should be taken as a challenge to the Prime Contract itself. The present suit in no way affects the validity of the Prime Contract. Indeed, if the Court were to find that the Bond was procured by fraud, such a finding would only invalidate the Bond, not the underlying contract between Defendant and TEC.

7

form of arbitration clause.  If that were the case, there would be no need for the Court to ever consider the scope of the agreement, and a court's inquiry would be limited to whether a valid agreement to arbitrate exists.  Consequently, even if the Court accepts that Plaintiff's attempt to void the Bond is the equivalent of an attempt to void the Prime Contract, the scope of the arbitration agreement simply does not reach the present dispute between Plaintiff and Defendant.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Compel Arbitration, ECF No. 6, is DENIED.

IT IS SO ORDERED.

Dated:  September 28, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE